IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DANIEL TYUS,

        Plaintiff,                             04cv0138

    v.                                   Electronically Filed

CITY OF NEW KENSINGTON, a
municipal corporation,
RON ZELLERS, individually, and
in his official capacity as a
police officer for the New
Kensington Police Department,
JOHN PECK, individually and in
his official capacity as
District Attorney of
Westmoreland County,
Pennsylvania,
LARRY KOENIG, individually and
in his official capacity as
Assistant District Attorney
for Westmoreland County,
Pennsylvania, and WESTMORELAND
COUNTY DISTRICT ATTORNEY'S
OFFICE,

        Defendants.

## MEMORANDUM OPINION ON WESTMORELAND COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**June 30, 2005**

### Introduction

Plaintiff Daniel Tyus filed this federal civil rights action pursuant to 42 U.S.C. § 1983,

*inter alia*, against the City of New Kensington and one of its police officers, Ronald Zellers, and

against the Westmoreland County District Attorney's Office, Westmoreland County District

Attorney John Peck, and two assistant district attorneys, Larry Koenig and Patrick Noonan, for

actions stemming from his arrest and prosecution for homicide and conspiracy to commit homicide.  Plaintiff was convicted of murder of the first degree for the killing of Kevin Golden on June 14, 1997 in Westmoreland County, based solely upon the testimony of four unreliable witnesses.  Plaintiff claims defendants knew these witnesses were unreliable, knew that their testimony was, at best, wrong, and knew there was no probable cause to arrest or prosecute him for murder.

On appeal, the Superior Court of Pennsylvania (i) held that the evidence was sufficient to sustain plaintiff's conviction, but (ii) that the conviction was based upon tainted and unreliable testimony of four witnesses, especially the key witness for the prosecution, Brian Allen.  According to the Superior Court, if the jury had not believed Brian Allen, it could not have returned a verdict of guilty.  The jury was permitted to consider the testimony of Mr. Allen and the other unreliable witnesses because the prosecutor's knowing use of their unreliable testimony went unchallenged because of his attorney's ineffectiveness in failing to effectively challenge this testimony or request an appropriate jury instruction.  Amended Complaint, Exhibit A, Superior Court of Pennsylvania Mem. Op., August 26, 1999, *Commonwealth v. Tyus*, 747 A.2d 421 (Pa. Super. 1999) (Table).

On remand for a new trial in the Court of Common Pleas of Westmoreland County, plaintiff and the District Attorney eventually reached an agreement on February 3, 2003, wherein plaintiff would enter a plea of nolo contendere, wherein the Court of Common Pleas of Westmoreland County, on the Commonwealth's motion, ordered a *nolle prosequi*[1] of the

---

[1]  Rule 585 of the Pennsylvania Rules of Criminal Procedure provides that, upon motion of the attorney for the Commonwealth, the court may, in open court, order a *nolle prosequi* of one or more charges.  *Nolle prosequi* means to "abandon (a suit or prosecution); to have (a case)

homicide and conspiracy to commit homicide charges, and defendant thereafter entered a plea of guilty to conspiracy to commit aggravated assault and be sentenced to time served, 51 months at that point. Plaintiff thereafter filed this complaint within one year of reaching that agreement.

On September 15, 2004, this Court dismissed all claims against ADA Noonan and individual capacity claims against District Attorney Peck because these claims were "based *solely* upon [Noonan's and Peck's] conduct and actions performed during the course of their *prosecutorial functions* in prosecuting plaintiff Daniel Tyus for murder in a court of law, and that they are absolutely immune from liability for all such conduct."  Mem. Op. September 15, 2004, at 4 (Document No. 40), relying on *Kalina v. Fletcher*, 522 U.S. 118 (1997) and *Imbler v. Pachtman*, 424 U.S. 409 (1976). The Court did not dismiss the official capacity claims against Peck or the claims against ADA Koenig, who prosecuted plaintiff at trial, because plaintiff had adequately alleged -- at that stage of the proceedings -- that Koenig actively participated in his investigation prior to the filing of the criminal complaint and in importuning the unreliable Brian Allen to testify against him, conduct arguably more investigative and non-judicial than prosecutorial actions taken in a judicial proceeding.  If demonstrated, such conduct would only be entitled to official immunity, which is not absolute.  *See, e.g., Buckley v. Fitzsimmons*, 509 U.S. 259, 272-78 (1993).

Under the liberal pleading standards for determining a motion to dismiss ("A claim should not be dismissed for failure to state a claim unless it appears beyond a doubt that the non-moving party can prove no set of facts in support of its allegations which would entitle it to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)), this Court held that ADA Koenig was not

---

dismissed . . . ." Black's Law Dictionary, 8th ed.

3

entitled to absolute prosecutorial immunity at that early stage of these proceedings, nor was District Attorney Peck entitled to such immunity in his official capacity, as he is responsible for supervision and training of his subordinates and other administrative tasks.  At this stage, however, it is a much different story.

Before the Court is a motion for summary judgment (Document No. 54) filed on behalf of defendants Westmoreland County District Attorney's Office, Westmoreland County District Attorney John Peck, and Assistant District Attorney ("ADA") Larry Koenig.  After careful consideration of the motion for summary judgment, plaintiff's response thereto, the respective memoranda of law, and respective supporting materials, the Court will grant the motion for summary judgment on the grounds that ADA Koenig is absolutely immune from suit because all of the conduct that plaintiff is able to support with record evidence occurred while Koenig was engaged in his prosecutorial function in a judicial proceeding, and that plaintiff has failed to sustain his burden of offering more than a "metaphysical doubt" about municipal liability against the Westmoreland County District Attorney's Office and official capacity liability of District Attorney Peck.

**Summary Judgment Standards**

Summary judgment under Fed.R.Civ.P. 56(c) is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Woodside v. School Dist. of Philadelphia Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001), *quoting Foehl v. United States*, 238 F.3d 474, 477 (3d Cir.2001) (citations omitted).  In deciding a summary judgment motion, the court must "view the

evidence ... through the prism of the substantive evidentiary burden" to determine "whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of the evidence required by the governing law or that he did not." *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993). Thus the non-moving party cannot rest on the pleadings, but instead must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), and cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (*citing Celotex*, 477 U.S. at 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n. 1 (3d Cir. 1994).

"In considering a motion for summary judgment, a district court may not make credibility

determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)." *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004.) *See also Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001) (court must view facts in the light most favorable, draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party ).

Defendants maintain that defendant Koenig's first involvement with this case was just prior to the July 7, 1997, preliminary hearing. Defendants state that, prior to that time, defendant Koenig "had not talked to Officer Zellers or any other officers investigating the case, nor had he ever met with or interviewed any witnesses." Defendants cite defendant Koenig's deposition wherein he stated that he had no contact with defendant Zellers, nor had he ever met with or interviewed any witnesses prior to July 7, 1997 (plaintiff Tyus' preliminary hearing). As such, defendants claim that all of the actions taken by defendant Koenig were with the scope of his prosecutorial duties and performed in a judicial role.

Plaintiff asserts in his Brief in Opposition to defendants' Motion for Summary Judgment that "defendant Koenig has stepped out of his prosecutorial function and conducted interviews of witnesses, fact finding and investigatory activities in the Tyus murder prosecution," as well as in *other* cases, which plaintiff illustrates in his argument.

**Prosecutor's Immunity**

In initiating prosecutions and in presenting the State's case, prosecutors are completely immune from civil suit for damages under section 1983. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir. 1992). In *Imbler*, the Supreme Court

recited several public policy considerations for granting absolute immunity to prosecutors from section 1983 claims stemming from their advocacy as prosecutors: (1) a prosecutor's exercise of independent judgment would be compromised if he or she were threatened with suits for damages for actions in initiating criminal cases; (2) the prosecutor's energies would be diverted from his or her official duties if forced to defend against section 1983 actions, and prosecute the case "defensively" looking over his or her shoulder; and (3) a post-trial decision in favor of the accused might result in a section 1983 action against the prosecutor for alleged errors or mistakes in judgment. *Imbler*, 424 U.S. at 425-27.

Prosecutors also are immune from liability for their participation in probable cause hearings and for seeking the issuance of search warrants from courts. *Burns v. Reed*, 500 U.S. 478, 487 (1991). Prosecutorial immunity applies even if the prosecutor acted wilfully, maliciously, or in bad faith. *Imbler*, 424 U.S. at 427, 428 n. 27; *Ernst v. Child & Youth Servs. of Chester County*, 108 F.3d 486, 502 (3d Cir. 1997). *See, e.g. Kulwicki, supra* at 1465 (listing "examples of prosecutorial activities protected by absolute, as opposed to qualified, immunity" including: soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings; eliciting false or defamatory statements from witnesses in a judicial proceeding; even interviews generating evidence to be presented to a grand jury are absolutely protected); *Benckini v. Ford*, ___ F.Supp. 2d ___, 2005 WL 1427688 (E.D.Pa. 2005) ("The acts alleged against [the prosecutor] -- withholding evidence; presenting secret closing arguments; putting witnesses on the stand who [the prosecutor] knew would commit perjury; conspiring with a judge to prevent a fair trial; and prosecuting a case out of spite, all clearly arose in the course of the Commonwealth's prosecution of Benckini. [The prosecutor] therefore is absolutely immune from

suit for these actions, even accepting Benckini's allegations as true." numerous citations

omitted)).  Handling evidence and prepping witnesses, moreover, clearly falls within a

prosecutor's duties of initiating and presenting the State's case.  *Henderson v. Fisher*, 631 F.2d

1115, 1120 (3d Cir. 1980)). *See also Gibbs v. Deckers*, 234 F.Supp.2d 458, 462-63 (E.D.Pa.

2002) (holding that concealment of exculpatory evidence is protected by prosecutorial

immunity); *Douris v. Schweiker*, 229 F.Supp.2d 391, 399 (E.D.Pa. 2002) ("withholding

exculpatory evidence is a quasi-judicial act protected by absolute immunity").

However, the Supreme Court has held that prosecutorial immunity does not apply when a

prosecutor's conduct falls outside of the traditional advocacy functions, such as when the

prosecutor engages in "investigative" or "administrative" functions, or where they hold press

conferences or do other acts not usually associated with traditional advocacy functions.  *See, e.g.,*

*Imbler*, 424 U.S. at 430-31; *Mitchell v. Forsyth*, 472 U.S. 511, 521 (1985) (prosecutor involved

in wiretapping); *Burns*, 500 U.S. at 496 (giving legal advice to police during a police

investigation); *Buckley, supra* (making false statements at a press conference).

It may not always be easy to distinguish actions taken in the "gray area," i.e., between

those taken in a quasi-judicial advocate's role and those taken in an investigative role.  *Rose v.*

*Bartle*, 871 F.2d 331, 346 (3d Cir. 1989), *citing Forsyth v. Kleindienst*, 599 F.2d 1203, 1215 (3d

Cir.1979), *cert. denied*, 453 U.S. 913 (1981).  "In determining whether absolute immunity is

available for particular actions, the courts engage in a 'functional' analysis of each alleged

activity." *Giuffre v. Bissell*, 31 F.3d 1241, 1251 (3d Cir. 1994), *citing Harlow v. Fitzgerald*, 457

U.S. 800, 811 (1982).[2]

Although plaintiff attempts to avail himself of this "investigative" or "administrative" function exception to absolute prosecutorial immunity, he has not offered sufficient evidence from which a jury might conclude that ADA Koening acted outside of his prosecutorial function, and there is no genuine issue of material fact on this issue. The record produced by plaintiff might support an inference that ADA Koening engaged in tactics during trial that were less than exemplary (e.g., going into the judge's chambers and removing photographic exhibits without court approval), but  plaintiff has not mustered any evidence to support an inference that he engaged in conduct related to *his prosecution* that was not within the scope of a prosecutor's traditional advocate functions in a judicial criminal proceeding.

Against the District Attorney, plaintiff alleges that Peck failed to adequately train, supervise or discipline ADA Koening, who allegedly failed to turn over exculpatory evidence in timely fashion and knowingly used false (or at least, coerced and tainted) testimony to obtain his conviction. Prosecutorial immunity does not extend to a municipality, or to policymakers in their official capacities. *See, e.g., Aitchison v. Raffiani*, 708 F.2d 96, 100 (3d Cir. 1983) (liability against the municipality is not precluded simply because its officials were found immune in their individual capacities); *Carver v. Foerster*, 102 F.3d 96 (3d Cir. 1996) (liability against municipal officers acting in their official capacities is not precluded simply because they may have been

---

[2]  In *Guiffre*, the United States Court of Appeals for the Third Circuit identified three factors to determine whether a government official should be given absolute immunity for a particular function, namely: whether there is "a historical or common law basis for the immunity in question;" whether performance of the function poses a risk of harassment or vexatious litigation against the official; and whether there exist alternatives to damage suits against the official as means of redressing wrongful conduct. 31 F.3d at 1252 (citations omitted).

found immune in their individual capacities). Accordingly, the District Attorney is not immune from civil liability for his administrative acts or unconstitutional policies that have led to a deprivation of plaintiff's constitutional rights.

However, it is not sufficient at this stage of the proceedings merely to mention general or potential training and disciplinary deficiencies. Plaintiff fails to support this claim with actual and sufficient record evidence of specific training/ disciplinary deficiencies and the requisite causal nexus with the alleged constitutional deprivation. *See Reitz v. County of Bucks*, 125 F.3d 139, 144-46 (3d Cir. 1997) ("A plaintiff pressing a § 1983 claim must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred."). Thus, there is no genuine issue of material fact on this issue.

In summary, the Court agrees with defendants, therefore, that there are no genuine issues of material facts that would permit the issues of ADA Koenig's immunity or District Attorney Peck's "official capacity" liability to go to the jury. Accordingly, defendants' motion for summary judgment as to all federal civil rights claims will be granted, and summary judgment entered in their favor.


       **s/    Arthur J. Schwab**
**Arthur J. Schwab**
**United States District Judge**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DANIEL TYUS,

      Plaintiff,                        04cv0138

     v.                             Electronically Filed

CITY OF NEW KENSINGTON, a
municipal corporation,
RON ZELLERS, individually, and
in his official capacity as a
police officer for the New
Kensington Police Department,
JOHN PECK, individually and in
his official capacity as
District Attorney of
Westmoreland County,
Pennsylvania,
LARRY KOENIG, individually and
in his official capacity as
Assistant District Attorney
for Westmoreland County,
Pennsylvania, and WESTMORELAND
COUNTY DISTRICT ATTORNEY'S
OFFICE,

      Defendants.

## ORDER OF COURT

**AND NOW, this 30th day of June, 2005**, **IT IS HEREBY ORDERED** that defendants'

motion for summary judgment (Document No. 54) is **GRANTED**, and summary judgment is

entered in favor of defendants John Peck, Larry Koenig, and the Westmoreland County's District

Attorney's Office.

                     **s/    Arthur J. Schwab**
                   **Arthur J. Schwab**
                   **United States District Judge**

cc:    All counsel of record as listed below

11

Judith Karns Ciszek, Esquire
Westminster Place
329 West Otterman Street
Greensburg, PA 15601

Mark R. Hamilton, Esquire
John M. Giunta, Esquire
Philip J. Sbrolla, Esquire
Rawle & Henderson
535 Smithfield Street
Suite 1000
Pittsburgh, PA 15222

Thomas P. Pellis, Esquire
Meyer, Darragh, Buckler, Babenek & Eck
114 S. Main Street
Greensburg, PA 15601