IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DANIEL TYUS,

        Plaintiff,                       04cv0138

    v.                                Electronically Filed

CITY OF NEW KENSINGTON, a
municipal corporation,
RON ZELLERS, individually, and
in his official capacity as a
police officer for the New
Kensington Police Department,
JOHN PECK, individually and in
his official capacity as
District Attorney of
Westmoreland County,
Pennsylvania,
LARRY KOENIG, individually and
in his official capacity as
Assistant District Attorney
for Westmoreland County,
Pennsylvania, and WESTMORELAND
COUNTY DISTRICT ATTORNEY'S
OFFICE,

        Defendants.

## MEMORANDUM OPINION ON MOTION FOR SUMMARY JUDGMENT BY CITY OF NEW KENSINGTON AND RONALD ZELLERS

**July 11, 2005**

### Introduction

On July 1, 2005, this Court entered an order granting defendants' City of New Kensington's and Lieutenant Detective Ronald Zellers' motion for summary judgment (Document No. 57), and stating that "a memorandum opinion in support of this order will be entered within ten days, with appropriate judgment order." This memorandum opinion explains that Order, and will be accompanied by the Court's Order entering judgment.

**Factual Background**

Plaintiff Daniel Tyus filed this federal civil rights action pursuant to 42 U.S.C. § 1983, *inter alia*, against the City of New Kensington and one of its police detectives, Detective Lieutenant Ronald Zellers (collectively, the "New Kensington defendants," individually, "Lt. Zellers"), and against the Westmoreland County District Attorney's Office, Westmoreland County District Attorney John Peck, and two assistant district attorneys, Larry Koenig and Patrick Noonan, for actions stemming from his arrest by Lt. Zellers and prosecution in the Court of Common Pleas of Westmoreland County, Pennsylvania, for homicide and conspiracy to commit homicide. Plaintiff was convicted of murder of the first degree for the June 14, 1997 killing of Kevin Golden based solely upon the testimony of four unreliable witnesses, and sentenced to life imprisonment without parole. Plaintiff claims all defendants knew these witnesses were unreliable, knew that their testimony was, at best, wrong, and at worst, perjured, and that Lt. Zellers knew there was no probable cause to arrest him for murder.

Plaintiff asserts that when Lt. Zellers first interviewed Brian Allen hours after the murder, on June 14th, Allen made no mention of Daniel Tyus being present or in any other way involved with Golden's death. Mr. Allen told Lt. Zeller that he was "past drunk" and could not remember the events of June 13-14, 1997. Plaintiff alleges Lt. Zellers interviewed other witnesses regarding the death, no one mentioned Daniel Tyus, and one said he was elsewhere on the night of the murder.

On June 27, 1997, Allen was summoned to the New Kensington police station, questioned for approximately three hours, and made a written statement to Lt. Zellers and Detective "Bull" Manning of the Westmoreland County District Attorney's office (now

deceased).  Plaintiff alleges this was the first time Mr. Allen mentioned anything about Danny

Tyus, and that he did so only after Lt. Zellers and Manning mentioned Tyus' name, grilled him

for three hours, threatened him with forty years in prison if he did not cooperate, and prompted

Allen to remember "bits and pieces" of the incident until he finally "remembered" that Tyus had

participated in the murder.  Allen in fact stated at a preliminary hearing that he was threatened

into giving that statement, and had told another witness, Ms. Caroline Beck, his girlfriend or

fiancee, that he was pressured into giving the statement by Lt. Zellers' and Detective Manning's

threat of forty years in jail if he did not give a full statement about Tyus' involvement.

Lt. Zellers applied to a local district justice for an arrest warrant for Daniel Tyus, and

swore out a complaint against him for criminal homicide and conspiracy to commit homicide, on

June 27, 1997.  Lt. Zellers' affidavit supplied the probable cause for the application for an arrest

warrant. Plaintiff's Exhibit 20 in Opposition to Summary Judgment  (Document No. 81),

Affidavit of Probable Cause.  The Affidavit  relied *solely* on Allen's later statement implicating

Daniel Tyus in the murder.  All of the other statements and information therein related to Eugene

Williams' role in the murder, and made no mention of Daniel Tyus.

The Affidavit states that on <u>June 14, 1997</u>, at 4:20 p.m., Lt. Zellers and Detective

Manning interviewed Allen at the police station and he voluntarily gave them information that

indicated Mr. Allen was with Eugene Williams, Danny Tyus, and Kevin Golden. The Affidavit

relates Mr. Allen's statement that he witnessed Danny Tyus in the bedroom (where Golden was

found murdered), and witnessed Eugene Williams stab Golden with an ice pick and Danny Tyus

"poking at Kevin with the knife . . . aiming at the midsection."

On its face, the Affidavit misrepresents the date of Mr. Allen's statement implicating

3

Tyus' involvement in the death.  That statement was not made on June 14, 1997, at 4:20 p.m. (approximately 10 hours subsequent to the murder), but on June 27, 2005, the day of plaintiff's arrest.  Lt. Zellers' rough notes, Exhibit 14 (Document No. 75) indicate that Allen told him "we were drinking" on June 14, 1997, but the Affidavit makes no mention of Allen's inebriation or of anything that would undermine Allen's judgment, reliability or ability to observe. Simply put, Lt. Zellers knew that Allen had been drinking heavily and did not include it in the Affidavit offered to the district justice.  According to Allen himself, he was "past drunk" the night of the murder, was "unsure Danny was even there . . . and [he did not] remember seeing Danny . . . and I can't say for sure Danny was there." Allen Deposition, Exhibit 13 (Document No. 74) at p. 11.

Lt. Zellers is aware that "the amount of alcohol a person consumes is important in assessing their information to be used in an affidavit since it goes to their reliability, credibility and ability to observe." Lt. Zellers' Deposition, Exhibit 15 (Document No. 76) at p. 25.

**Post Sentencing Pennsylvania Criminal Proceedings**

On direct appeal from plaintiff's conviction and sentence, the Superior Court of Pennsylvania (i) held that the evidence was sufficient to sustain plaintiff's conviction, but (ii) said conviction was based upon tainted and unreliable testimony of four witnesses, especially the key witness for the prosecution, Brian Allen.  According to the Superior Court, if the jury had not believed Brian Allen, it could not have returned a verdict of guilty.  The jury was permitted to consider the testimony of Mr. Allen and the other unreliable witnesses because the prosecutor's knowing use of their unreliable testimony went unchallenged because of his attorney's ineffectiveness in failing to effectively challenge this testimony or request an appropriate jury instruction.  Amended Complaint, Exhibit A, Superior Court of Pennsylvania

Mem. Op., August 26, 1999, *Commonwealth v. Tyus*, 747 A.2d 421 (Pa. Super. 1999) (Table).

On remand for a new trial in the Court of Common Pleas of Westmoreland County, the trial court granted plaintiff's motion to prevent the Commonwealth from introducing prior recorded testimony of a key witnesses against plaintiff, who had become unavailable for the retrial, and the Commonwealth unsuccessfully appealed that decision. Eventually, plaintiff and the District Attorney reached a "time served" agreement on February 3, 2003. By this agreement, the Commonwealth would move to *nolle prosequi*[1] the homicide and conspiracy to commit homicide charges, the Court of Common Pleas would grant the motion and permit the Commonwealth to amend its criminal complaint to charge plaintiff with conspiracy to commit aggravated assault, and defendant would enter a plea of nolo contendere to that charge and be sentenced to time served, 51 months at that point, and two years probation. Plaintiff thereafter filed this complaint within one year of reaching that agreement.

**Previous Rulings by This Court**

On September 15, 2004, this Court dismissed all claims against ADA Noonan and individual capacity claims against District Attorney Peck because these claims were "based *solely* upon [Noonan's and Peck's] conduct and actions performed during the course of their *prosecutorial functions* in prosecuting plaintiff Daniel Tyus for murder in a court of law, and that they are absolutely immune from liability for all such conduct." Mem. Op. September 15, 2004, at 4 (Document No. 40), relying on *Kalina v. Fletcher*, 522 U.S. 118 (1997) and *Imbler v.*

---

[1] Rule 585 of the Pennsylvania Rules of Criminal Procedure provides that, upon motion of the attorney for the Commonwealth, the court may, in open court, order a *nolle prosequi* of one or more charges. *Nolle prosequi* means to "abandon (a suit or prosecution); to have (a case) dismissed . . . ." Black's Law Dictionary, 8th ed.

*Pachtman*, 424 U.S. 409 (1976). The Court did not dismiss the official capacity claims against Peck or the claims against ADA Koenig, who prosecuted plaintiff at trial, because plaintiff had adequately alleged -- at that stage of the proceedings -- that Koenig actively participated in his investigation prior to the filing of the criminal complaint and in importuning, pre arrest, the unreliable Brian Allen to testify against him, conduct arguably more investigative and non-judicial than prosecutorial actions taken in a judicial proceeding.  If demonstrated, such conduct would only be entitled to official immunity, which is not absolute.  *See, e.g., Buckley v. Fitzsimmons*, 509 U.S. 259, 272-78 (1993).  However, by memorandum opinion and order of June 30, 2005, on the Westmoreland County defendants' motion for summary judgment, the Court held that ADA Koenig was entitled to absolute prosecutorial immunity and found plaintiff's evidence as to the claims against Peck in his official capacity and municipal liability claims against Westmoreland County's inadequate to survive summary judgment. (Document No. 93).

Also on September 15, 2004, this Court denied the motion to dismiss plaintiff's amended complaint filed on behalf of the New Kensington defendants, (Document No. 28), stating: "Viewed in light of the above liberal pleading standards, this Court simply cannot say, at this early stage of the proceedings, that plaintiff will be able to state no set of facts in support of the remainder of the claims in his amended complaint."  Mem. Op. September 15, 2004, at 5 (Document No. 40).

The Court then considered the motion for summary judgment (Document No. 57) filed on behalf of the New Kensington defendants, and granted it on July 1, 2005, with notice and facsimile copies to counsel that day. (Document No. 95).  After careful consideration of the

motion for summary judgment, plaintiff's response thereto, the respective memoranda of law,

and respective supporting materials, which are voluminous, the Court granted the motion for

summary judgment as to the City of New Kensington and Lt. Zellers in his official capacity,

because plaintiff failed to sustain his burden of offering more than a "metaphysical doubt" about

municipal liability against the City or official liability against Detective Lt. Zellers (to the extent

he might be viewed as a decision maker subject to official capacity liability).  The Court granted

summary judgment in favor of Lt. Zellers in his individual capacity for the reasons set forth

below.

**The Amended Complaint**

Plaintiff's Amended Complaint is imprecise and broad; it raises the following (somewhat

redundant) federal civil rights claims against all defendants, although some are much more

applicable to one set of defendants than the other:[2] Count I - violations of his Fourth and

Fourteenth Amendments rights to be free from unreasonable search and seizures, false arrest,

false imprisonment, privacy, due process and equal protection"; Count II - violations of his

Fourth and Fourteenth Amendments rights to be free from unlawful detention and malicious

prosecution; Count III - malicious prosecution; Count IV - conspiracy to deprive plaintiff of his

civil rights; Count V - "Federal Civil Rights Violation - Casting in a False Light"; Count VI -

substantive due process in violation of the Fourteenth Amendment; Count VII - "Civil Rights

Conspiracy - [42 U.S.C.] Section 1985."

---

[2]  While plaintiff mentions that jurisdiction is predicated in part on "the supplemental jurisdiction of this Court under 28 U.S.C. § 1367(a) to adjudicate state law claims," Amended Complaint, ¶ 3, the seven counts of the amended complaint each plainly claim "federal civil rights" causes of action, and the Court therefore limits its analysis of the amended complaint and the motion for summary judgment to federal civil rights claims.

The gravamen of Plaintiff's federal civil rights complaint against the New Kensington defendants is the arrest warrant – plaintiff claims that his arrest was without probable cause because Lt. Zellers' Affidavit omitted crucial information that prevented a neutral and detached magistrate from making an accurate assessment of the reliability of the sole witness named in the Affidavit against him, Brian Allen. While there may have been enough evidence on the record for the probable cause issue to go to the jury (although the Court does not decide this issue), plaintiff cannot meet his burden of showing an essential element of his claims, that the prosecution terminated in his favor.

**Summary Judgment Standards**

Summary judgment under Fed.R.Civ.P. 56(c) is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Woodside v. School Dist. of Philadelphia Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001), *quoting Foehl v. United States*, 238 F.3d 474, 477 (3d Cir.2001) (citations omitted). In deciding a summary judgment motion, the court must "view the evidence ... through the prism of the substantive evidentiary burden" to determine "whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of the evidence required by the governing law or that he did not." *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there

8

is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v.  Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993). Thus the non-moving party cannot rest on the pleadings, but instead must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), and cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (*citing Celotex*, 477 U.S. at 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n. 1 (3d Cir. 1994).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)." *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004.)  *See also Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001) (court must view facts in the light most favorable, draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party).

9

**City of New Kensington and Lt. Zellers in His Official Capacity**

The City asserts, correctly, that plaintiff has failed to support her conclusory allegations against the City to trigger *Monell* liability.  In *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 689 (1978), the United States Supreme Court held that although municipalities and other local governmental bodies are "persons" within the meaning of section 1983, a municipality may not be held vicariously liable under section 1983 solely because of the existence of an employer-employee relationship with a tortfeasor. Instead,

> in *Monell* and subsequent cases, we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal "policy" or "custom" that ***caused*** the plaintiff's injury . . . .  Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials ***whose acts may fairly be said to be those of the municipality***. *Monell, supra*, at 694, 98 S.Ct., at 2027.   Similarly, an act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law. 436 U.S., at 690-691, 98 S.Ct., at 2035-2036 (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168, 90 S.Ct. 1598, 1613-1614, 26 L.Ed.2d 142 (1970)).
>
> *   *   *
>
> As our § 1983 municipal liability jurisprudence illustrates, however, it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.   ***The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged***. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Board of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403-04 (1997).

10

As municipal civil rights liability has since developed,

> . . . a municipality may only be liable for the torts of its employees
> in one of three ways: First, the municipality will be liable if its
> employee acted pursuant to a formal government policy or a
> standard operating procedure long accepted within the government
> entity, *Jett v. Dallas Independent School District*, 491 U.S. 701,
> 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); second, liability will
> attach when the individual has policy making authority rendering
> his or her behavior an act of official government policy, *Pembaur
> v. City of Cincinnati*, 475 U.S. 469, 480-81, 106 S.Ct. 1292, 89
> L.Ed.2d 452 (1986); third, the municipality will be liable if an
> official with authority has ratified the unconstitutional actions of a
> subordinate, rendering such behavior official for liability purposes,
> *City of St. Louis v. Proprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915,
> 99 L.Ed.2d 107 (1988).

*McGreevy v. Stroup*, --- F.3d ----, 2005 WL 1515891, *7 (3d Cir. 2005).

Plaintiff asserts only the first basis for *Monell* liability -- the "failure to train or

discipline" variety.  In *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989), the Court

resolved a dispute amongst the circuit courts of appeal and held that "the inadequacy of police

training may serve as the basis for section 1983 liability *only where the failure to train amounts

to deliberate indifference* to the rights of persons with whom the police come into contact."

(emphasis added). The Court found this rule most consistent with its admonition in *Monell* that a

municipality can be liable under section 1983 only if its policies are the moving force behind the

constitutional violation. "Only where a municipality's failure to train its employees in a relevant

respect evidences a "deliberate indifference" to the rights of its inhabitants can such a

shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983."

*City of Canton*, 489 U.S. at 389.

Moreover, a plaintiff must show not only an unlawful policy or custom of the

municipality, he must also establish that such policy or custom was the proximate cause of his

injuries by showing a plausible nexus or affirmative link between the alleged policy or custom and the injuries. *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996).  Failure to adequately screen or train municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations.  *See Bryan County*, 520 U.S. at 408-09.  Although it is *possible* to maintain a claim of failure to train without demonstrating such a pattern, the *Bryan County* Court made clear that the burden on the plaintiff in such a case is high. *Id.*

It is not sufficient at the summary judgment stage of proceedings merely to *mention* general or *potential* training and disciplinary deficiencies.  Plaintiff fails to support his claim of *Monell* liability against the City with actual and sufficient record evidence of specific training or disciplinary deficiencies that might have contributed to Lt. Zellers' alleged unconstitutional conduct in this case, or the requisite causal nexus with the alleged constitutional deprivation. *See Reitz v. County of Bucks*, 125 F.3d 139, 144-46 (3d Cir. 1997) ("A plaintiff pressing a § 1983 claim must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred.").

Plaintiff merely mentions that the City failed to discipline Lt. Zellers for violating its policies and procedures *in his own case*, Counterstatement of Material Facts, (Document No. 91) at ¶¶ 70-74, and offers no evidence that would support a failure to train - deliberate indifference claim.  *Necessarily*, failure to discipline an officer for the claimed constitutional violations giving rise to the lawsuit cannot have proximately caused those violations.  Thus, there is no genuine issue of material fact on this issue, and the Court will grant summary judgment for the

City of New Kensington.

The same analysis is applicable to plaintiff's claim against Lt. Zellers in his official capacity [to the extent he may have been a policymaker]. *Mitros v. Bor. of Glenholden*, 170 F.Supp.2d 504, 506 (E.D.Pa. 2001) (where suit is brought against a public official in his official capacity, the suit is treated as if it were brought against the governmental entity of which he is an official) (*citing Brandon v. Holt*, 469 U.S. 464, 471-72(1985)).

### Detective Lieutenant Ronald Lt. Zellers - Individual Capacity

The principal claims against Lt. Zellers stem from his alleged false arrest without probable cause and malicious prosecution. Both of these claims fail because the criminal prosecution did not terminate in plaintiff's favor, a necessary element of both.

**Favorable Termination**.  A common element of malicious prosecution and false arrest, and, in this case, the alleged section 1985 conspiracy to deprive plaintiff of his constitutional rights to be free from such things, is that the prosecution must have terminated in his favor.  The Court agrees with defendants that the record conclusively establishes that his prosecution did not terminate in his favor.

### Malicious Prosecution

A civil rights claim for malicious prosecution is actionable under section 1983. See *Losch v. Bor. of Parkesburg*, 736 F.2d 903, 907-08 (3d Cir. 1984). In order to maintain a section 1983 claim for malicious prosecution based upon the Fourth Amendment, Plaintiff has to prove: "(1) the defendants initiated a criminal proceeding; (2) *the criminal proceeding ended in plaintiff's favor*; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice." *Donahue v. Gavin*, 280

F.3d 371, 379 (3d Cir. 2002).

A favorable termination of a criminal proceeding results, inter alia, where the prosecutor formally abandons the proceedings ("nolle prosequi" or "nol pros"), the indictment or information is quashed, a criminal defendant is acquitted, or the accused receives a final order in his or her favor by a trial or appellate court. *Donahue*, 280 F.3d at 383, *quoting* Restatement (Second) of Torts, Section 659 (1976); *Haefner v. Burkey*, 534 Pa. 62, 626 A.2d 519, 521 (1993) (adopting Restatement (Second) of Torts, section 659). Under the common law doctrine of "nolle prosequi," or nol pros, prosecutors have the power to decide whether to proceed with the prosecution of a charged defendant. *In re Richards*, 213 F.3d 773, 782 (3d Cir. 2000). In Pennsylvania, "[a] nolle prosequi is a voluntary withdrawal by a prosecuting attorney of proceedings on a particular criminal bill or information, which at anytime in the future can be lifted upon appropriate motion in order to permit a revival of the original criminal bill or information." *Commonwealth v. Ahearn*, 543 Pa. 174, 670 A.2d 133, 135 (Pa. 1996). Accordingly, "nolle prosequi acts neither as an acquittal nor a conviction." *Id.* at 136.

As the United States Court of Appeals for the Third Circuit recently noted, "while 'a grant of nolle prosequi can be sufficient to satisfy the favorable termination requirement for malicious prosecution, not all cases where the prosecutor abandons criminal charges are considered to have terminated favorably.'" *Donahue*, 280 F.3d at 383, *quoting Hilfirty v. Shipman*, 91 F.3d 573, 579-80 (3d Cir. 1996)). Rather, in order for a nol pros to signify a favorable termination in a criminal matter, there must be a "'final disposition . . . such as to indicate the innocence of the accused.'" *Id.* In other words, a plaintiff alleging a section 1983 malicious prosecution claim must be innocent of the crime charged in the underlying

14

prosecution.'" *Id.*, quoting *Hector v. Watt*, 235 F.3d 154, 156 (3d Cir. 2000).

The documents from the Court of Common Pleas of Westmoreland County, Brief for New Kensington Defendants, Exhibit J, Order of Court and Sentence, Exhibit O, Transcript of Nolo Contendere Plea proceeding February 3, 2003, demonstrate that the prosecution did not terminate in his favor. At his retrial, defendant's (plaintiff's) jury was picked and sworn, and he was ready to go to trial when he accepted the Commonwealth's plea offer. Their plea agreement provided that (i) the Commonwealth would nol pros the homicide charge; (ii) the Commonwealth would move the Court of Common Pleas for permission to amend the conspiracy to commit homicide charge to conspiracy to commit aggravated assault against Mr. Golden; (iii) defendant (plaintiff) would plead nolo contendere to the amended conspiracy charge; and (iv) the Court would sentence Mr. Tyus to time served, plus two years probation, on the conspiracy to commit aggravated assault guilty plea.

Plaintiff argues that the Commonwealth abandoned the prosecution because it simply had insufficient evidence against him at that point, the trial court having ruled against it on a critical evidentiary issue and the inculpatory testimony of Mr. Allen having been thoroughly discredited. There may be some merit to this argument, but it still does not show that the criminal prosecution ended in his favor.

The plea and sentence was a classic compromise of the charges against Mr. Tyus, each side giving and taking something, and while they do not prove that he killed Kevin Golden, neither do they prove him innocent of that offense. They do, however, legally establish his guilt for conspiracy to commit aggravated assault against Mr. Golden, *see Duffy v. Cuyler*, 581 F.2d 1059 (3d Cir. 1978) (no constitutional significance between plea of nolo contendere and a guilty

15

plea); *Commonwealth v. Perillo*, 426 Pa.Super. 1, 626 A.2d 163, 166, *appeal denied*, 535 Pa.

674, 636 A.2d 633 (1993) (criminal defendant who offers a plea of nolo contendere to a given

charge stands in the same shoes as one who has been convicted of the charged offense), for

which he received punishment *in addition* to the time already served in prison, namely, two

years probation.  The unfavorable result in the criminal prosecution precludes his success on his

malicious prosecution civil rights claim herein.

**False Arrest**

The "proper inquiry in a section 1983 claim based on false arrest or misuse of the

criminal process is not whether the person arrested in fact committed the offense but whether the

arresting officers had probable cause to believe the person arrested had committed the offense."

*Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988). *See also, Losch*, 736 F.2d

903; *Patzig v. O'Neil*, 577 F.2d 841, 848 (3d Cir. 1978).  Contrary to defendants' assertion, the

presentation of false evidence to the magistrate to obtain an arrest warrant, or the omission of

materially false evidence from the affidavit of probable cause, may suffice to show the lack of

probable cause to sustain a false arrest civil rights violation.  *See Wilson v. Russo*, 212 F.3d 781

(3d Cir. 1999) (officer acted in reckless disregard for truth in some of his omissions and

assertions to judge who issued arrest warrant, but since none of these misstatements or omissions

were material, plaintiff's right to be free from arrest without probable cause was not violated);

*Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997) (an arrest warrant issued by a

magistrate or judge does not, in itself, shelter an officer from liability for false arrest).

However, while the state of the law in the Third Circuit is not free from all doubt, the

Court holds that the favorable termination of the criminal prosecution precludes plaintiff's false

arrest claim, even assuming that any falsehoods in or omissions from Lt. Zellers' affidavit of

probable cause were material.  The "common-law rule," equally applicable to actions under

Section 1983 "asserting false arrest, false imprisonment, or malicious prosecution, was and is

that the plaintiff can under no circumstances recover if he was convicted of the offense for which

he was arrested."  *Cameron v. Fogarty*, 806 F.2d 380, 387 (2nd Cir. 1986), *cert. denied*, 481

U.S. 1016 (1987); *see also Walker v. Schaeffer*, 854 F.2d 138, 142 (6th Cir. 1988) ("agreeing"

with the conclusion in Cameron that "where law enforcement officers have made an arrest, the

resulting conviction is a defense to a Section 1983 action asserting that the arrest was made

without probable cause")*;  Torres v. McLaughlin*, 966 F.Supp. 1353, 1368 n. 18 (E.D.Pa.1997)

(citing Cameron with approval), *reversed on other grounds*, 163 F.3d 169 (3d Cir. 1998), *cert.

denied*, 528 U.S. 1079 (2000); *Ruiz v. Philadelphia Housing Auth.*, 1998 WL 372548 (E.D.Pa.

1998).  *But see Rose v. Bartle*, 871 F.2d 331, 350-351 (3d Cir. 1989) (expressing some

"misgivings' about the *Cameron* rule).

      To the extent any false arrest claim may have survived the unfavorable termination of the

criminal prosecution, plaintiff's potential damages would have been severely restricted because

any damages for false arrest would have ceased a few days later, at the point he was charged

formally and held for trial.  *Hector v. Watt*, 235 F.3d at 156 ("False arrest does not permit

damages incurred after an indictment").  Any damages after that point would have to be covered,

if at all, by a claim for malicious prosecution.  *Id.*

### Conspiracy - 42 U.S.C. Section 1985

      As to plaintiff's imprecisely pleaded "Section 1985" claims generally, the Court

presumes plaintiff is alleging a claim pursuant to the second clause of that section, 42 U.S.C. §

1985(2), "Obstructing justice; intimidating party, witness, or juror," which provides in (likely) relevant part:  "If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully . . . or to influence the verdict . . .  the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators. 42 U.S.C. § 1985(2) and (3).  Elements of this claim are: "(1) a conspiracy between two or more persons, (2) to deter a witness by force, intimidation or threat from attending court or testifying freely in any pending matter, which (3) results in injury to the plaintiffs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1206 (3d Cir. 1988).

Plaintiff does little more than name all of the individuals involved in the criminal prosecution and asserts boldly that they "conspired to deprive him of his civil rights," without pointing to any particular record evidence (like deposition testimony) to support such a conspiracy.  However, even if it is intuitive that the state actors worked together to obtain plaintiff's conviction, that is not the same as a conspiracy to deprive him of his civil rights. Moreover, it seems to this Court that, as a matter of law, the nolo contendere plea to conspiracy to commit aggravated assault against Kevin Golden means there was no constitutional injury from this common enterprise, in much the same way that the unfavorable termination precludes plaintiff's claims for false arrest.

**Equal Protection**

Plaintiff makes no attempt to prove the elements of an equal protection claim.  He simply notes that he is African American, and he points to no similarly situated non-class members that

received more favorable treatment from these defendants.  That is not sufficient.

**Due Process**

Plaintiff's substantive due process claim is subsumed by the more specifically applicable Fourth Amendment false arrest and malicious prosecution claims, and does not state a separate, cognizable constitutional claim. *Hector*, 235 F.3d at 156; *Albright v. Oliver*, 510 U.S. 266, 272 (1994); *Torres v. McLaughlin*, 163 F.3d 169 (3d Cir. 1998), *cert. denied*, 528 U.S. 1079 (2000).

**"Invasion of Privacy - False Light"**

There are four types of common law invasion of privacy in Pennsylvania: (1) publicity given to private life; (2) intrusion upon seclusion; (3) appropriation of name or likeness; and (4) publicly placing a person in a false light.  *Tucker v. Merck & Co.*, 102 Fed. Appx. 247, 256 (3d Cir. 2004), *citing Vogel v. W.T. Grant Co.*, 458 Pa. 124, 327 A.2d 133, 136 (1974).  However, plaintiff is not alleging a common law claim, but rather, very specifically identifies his "Fifth Cause of Action for Federal Civil Rights Violations Invasion of Privacy - Casting in a False Light."  Amended Complaint, Count V.

Plaintiff cites no authority in support of his proposition that an "invasion of privacy - false light" theory is a cognizable federal civil rights claim, and this Court has not discovered such a federal civil rights cause of action.  If such a claim existed, it would also be subsumed, most likely, by plaintiff's Fourth Amendment based claims.  *See Albright*.  The Court therefore will grant summary judgment on this claim.

**Conclusion**

In summary, the Court agrees with defendants that there are no genuine issues of material facts that would permit the federal civil rights claims against the City of New Kensington or Lt. Zellers to go to the jury.  Summary judgment in defendants' favor is appropriate, as set forth in this Court's previous Order granting defendants' motion for summary judgment (Document No. 57).


 **s/Arthur J. Schwab**
**Arthur J. Schwab**
**United States District Judge**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DANIEL TYUS,
          Plaintiff,                          04cv0138
     v.                                  Electronically Filed

CITY OF NEW KENSINGTON, a
municipal corporation,
RON ZELLERS, individually, and
in his official capacity as a
police officer for the New
Kensington Police Department,
JOHN PECK, individually and in
his official capacity as
District Attorney of
Westmoreland County,
Pennsylvania,
LARRY KOENIG, individually and
in his official capacity as
Assistant District Attorney
for Westmoreland County,
Pennsylvania, and WESTMORELAND
COUNTY DISTRICT ATTORNEY'S
OFFICE,
          Defendants.

## ORDER ON MOTION FOR SUMMARY JUDGMENT BY
## CITY OF NEW KENSINGTON AND RONALD ZELLERS

      **AND NOW, this 11ᵗʰ day of July, 2005**, for the reasons set forth in this Court's Order of

July 1, 2005, and accompanying Memorandum Opinion, **JUDGMENT IS HEREBY**

**ENTERED IN FAVOR OF DEFENDANTS' CITY OF NEW KENSINGTON AND**

**DETECTIVE LT. RONALD ZELLERS.**

      This case is **HEREBY CLOSED**.

                   **s/Arthur J. Schwab**
                   **Arthur J. Schwab**
                   **United States District Judge**

cc: all counsel of record